UNITED STATES DISTRICT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


vs.                                                        DECISION AND ORDER
                                                              05-CR-6075 CJS


RODRIQUE AMANUEL, DONALD MINNI
and SCOTT DEMEYER,

                    Defendants.


_____


**INTRODUCTION**

Each of the above-named defendants was charged with one count of conspiracy to

possess with intent to distribute and to distribute cocaine in indictment No. 05-CR-6075,

returned by a federal grand jury and filed on May 19, 2005. Subsequently, each filed an

omnibus motion seeking various forms of relief. Common to all three motions is an

application to suppress evidence derived from a March 19, 2002 New York State

eavesdropping warrant, relating to a digital pager, which was signed by Hon. Patricia D.

Marks, Monroe County Court Judge. On this point, the government concedes that should

suppression be granted, it could not prevail upon trial as to any of the defendants.[1] For the

reasons stated below, the Court, as to each defendant, grants his application to suppress

any and all evidence derived from the March 19, 2002 state eavesdropping warrant.

---

[1]This being the case, it is unnecessary for the Court to address other aspects of the
motions brought by the defendants.

## BACKGROUND

The facts and circumstances underlying this federal indictment were initially the subject of a state prosecution. More specifically, on November 27, 2002, the defendants were all indicted by a Monroe County, New York grand jury for various drug related offenses, which are encompassed by the conspiracy count at issue here. In the course of the state prosecution, each defendant made the same motion for suppression that is now before this Court. In that regard, the Honorable Kenneth R. Fisher, New York State Supreme Court Justice, in his Amended Decision and Order dated May 1, 2003, granted each defendant's application to suppress. In doing so, Judge Fisher found that the police violated New York Criminal Procedure Law ("C.P.L.") § 700.35(3), as well as the very terms of Judge Marks' eavesdropping warrant itself, by failing to capture the digital pager communications on a "tape or wire or other comparable device." C.P.L. § 700.35(3). In arriving at his decision, Justice Fisher made the following findings of fact, which are undisputed in this action:

> The first eavesdropping order issued in connection with this cocaine distribution investigation was signed March 19, 2002. It authorized the interception and recording of "digital and/or alpha-numeric messages over the paging instrument bearing the number (716)783-8545, listed to Arch Wireless, subscribed in the name of Joseph Amanuel and being utilized by Donald R. Minni." The eavesdropping order, which was drafted by representatives of the People and presented to the issuing judge, prescribed "that the interceptions will be captured on a computer maintained by the New York State Police, and the computer system shall make a record of every digital message intercepted from the target pager and all such records will be kept and stored by computer and maintained at the New York State Police, C-NET office, Batavia, New York." It also prescribed "that any and all electronic communications or fragments thereof which are intercepted and monitored . . . shall be listed and recorded in a manner which will protect the records from editing and alteration." The eavesdropping order permitted Senior Investigator Paul Kelly "or members of the investigative team, [to] monitor pager activity

from a duplicate or 'clone' paging device which will be in the possession of Inv. Kelly or investigative team twenty-four (24) hours a day, seven (7) days a week."

The defendants allege, and the People concede, that recording of the communications intercepted pursuant to this March 19th eavesdropping order was accomplished, exclusively, by a visual monitoring of a clone pager after which handwritten log entries were prepared of the digital messages observed.  Upon expiration of the March 19th order, the People did not submit for sealing those handwritten notes until 29 days later, upon termination of an extension order (signed on April 18, 2002), on May 17, 2002.  The sealing order issued on May 17th incorporated 84 pages of original handwritten entries of paged numeric messages, which the People allege were made by Investigator Larry B. Jackson during execution of the March 19th order.  The People allege further that this was necessary because the clone pager used to monitor the intercepted pages could not store the information from the same number over a period of time, and therefore would not be "subject to subsequent retrieval." In addition, the People allege, "if 17 or more pages came in, the possibility existed that paging information could be lost."  On the other hand, the People concede that they were aware of technology as close as Albany, New York, in the form of a "pager receiver," which rendered it possible to conduct and record the interceptions as provided in the statute and the eavesdropping order.  Indeed, the People acknowledge that they obtained a pager receiver for such purpose in connection with their execution of subsequent eavesdropping orders dated May 30, 2002. . . .

In the reported cases on the subject, that possibility, at least in the abstract, by means of a computerized "digital receiver," has been in existence at least since 1994. *United States v. Hermanek*, 289 F.3d at 1089 ("pager receivers were a relatively new technology in 1994"). Whether that possibility in the abstract is enough to render the People's methods here violative of § 700.35(3) is a question that on this record need not be reached. In this case, the People not only concede their knowledge of the technology, but also concede that digital receivers were within the state and as proximate as Albany. They do not allege that the one in Albany was "unavailable" to the investigation (except that is was not then in the Rochester and Monroe County area) and they allege no exigent or other circumstances which served to prevent acquisition of it from Albany to serve the purposes of the statute during execution of the March 19th eavesdropping order. In other words, no logistical impediment to the use of a digital receiver is alleged by the People. Moreover, the problem, if there was one, was not presented to the issuing judge, who had every right to assume from the terms of the eavesdropping warrant presented to her that interception and recording would occur on the Batavia computer.

**ANALYSIS**

Essentially, the defendants argue that this Court should adopt the reasoning of Justice Fisher's decision and grant suppression. They point out that the federal eavesdropping statute, 18 U.S.C. § 2510, et. seq. ("Title III"), contains a provision virtually identical to C.P.L. § 700.35(3) on which Justice's Fisher's determination hinged. Specifically, C.P.L. §700.35(3) states: "The contents of any communication intercepted or of any observation made by any means authorized by this article must, if possible, be recorded on tape or wire or other comparable device," while 18 U.S.C. § 2518(8)(a) provides: "The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device."

Moreover, defendants Amanuel and Minni go so far as to maintain that, since the eavesdropping warrant in issue was obtained pursuant to the New York C.P.L., state law, not federal law controls. Consequently they argue that this Court must, as Justice Fisher did, grant suppression in accordance with New York decisional law, which requires strict compliance with New York's eavesdropping statute. Damelio Affirm. in support of Amanuel Mot. #3 Aug. 25, 2005, p.6 ("There state law is more restrictive than federal law; a wiretap must comply with state law to be admissible in Federal Court."); Parrinello Affirm. in support of Minni's Mot. Sept. 13, 2005, p. 34 ( "Under the Sotomayor[2] rule, the federal courts must apply the state law relevant to the procedures for the interception of electronic communications in this case, and must apply the remedy required by state

---

[2]*United States v. Sotomayer*, 592 F.2d 1219, 1225 (2d Cir. 1979), *cert. denied. sub. nom.*, *Crespo v. United States,* 442 U.S. 919 (1979).

law–suppression.").

On the other hand, the government argues that federal, not state law controls, and that under federal law, even if the Court determines that the police did in fact violate the requirement of C.P.L. 700.35(3) and Judge Marks' order, suppression is not warranted. In this regard, the government emphasizes that the Supreme Court has held that "[not] every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez*, 416 U.S. 562, 574-75 (1974), and that suppression is mandated solely for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505 (1974). The government maintains that, since the recording requirement of 18 U.S.C. § 2518(8)(a) was enacted only to serve an evidentiary function, it is not an integral part of the statutory scheme, and that, therefore, a violation as to recording would not substantially impinge upon Fourth Amendment privacy rights sought to be protected by Congress in restricting and rendering uniform the use of electronic surveillance.[3] Accordingly, the

---

[3]However,

> [t]he federal wiretapping statute goes further to protect privacy than the Fourth Amendment. "Except as expressly authorized ... all interceptions of wire and oral communications are flatly prohibited. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes ... Title III also bars the use as evidence before official bodies of the contents and fruits of illegal interceptions...." *Gelbard v. United States*, 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972). The legislative purpose is plain: "The protection of privacy was an overriding congressional concern." *Id.* at 48, 92 S.Ct. at 2361.

*Chandler v. U.S. Army*,  125 F.3d 1296, 1298 (9th Cir. 1997)

government contends that a failure to record, although clearly mandated by § 2518(8)(a) would never, under any circumstances, justify suppression. In support of its position as to recording, the government relies on four cases, which it argues are on point: *United States v. Clerkley*, 556 F.2d 709, 719 (4th Cir. 1977); *United States v. Daly*, 535 F. 2d 434, 442 (8th Cir. 1976); *United States v. Gerena*, 695 F. Supp. 1379, 1393-94 (D. Conn. 1988); and *United States v. Paredes-Moya*, 722 F. Supp. 1402, 1407 (N.D. Tex. 1989), *aff'd in part, rev'd in part on other grounds*, 928 F. 2d 665 (5th Cir. 1991). The Court will consider each in turn. However, before doing so, the Court must necessarily address the dispute as to whether federal or state law controls.

Title 18 U.S.C. § 2156(2) authorizes state court judges to issue wiretaps in conformity with Title III and "the applicable State statute." In a trilogy of cases, the Second Circuit held that, where state law is more restrictive than federal law, a wiretap must comply with state law to be admissible in federal court. *United States v. Marion*, 535 F.2d 697, 702 (2d Cir. 1976); *United States v. Rizzo*, 491 F.2d 215, 217 (2d Cir. 1974); *United States v. Manfredi*, 488 F.2d 588, 598 (2d Cir. 1973). However, the Circuit subsequently narrowed this holding to "those more stringent state statutory requirements or standards that are designed to protect an individual's right of privacy, as distinguished from procedural rules that are essentially evidentiary in character." *United States v. Sotomayor*, 592 F. 2d at 1225. Then in *United States v. Miller*, 116 F. 3d 641 (2d Cir. 1997), the Circuit referred to the statements in the earlier cases as "dicta" and noted that they "have never been applied to exclude evidence." *Id.* at 660.   It now appears clear that a state court's order suppressing eavesdropping evidence is not binding on the federal courts and does not

establish that evidence was intercepted in violation of Title III. *Id*. at 662-63. Consequently,

despite defendants Amanuel's and Minni's contention to the contrary, the Court determines

that federal law controls.

Turning now to the cases upon which the government relies, the Court finds the facts

of each distinguishable from the situation presented here. In *Clerkley*, the Fourth Circuit

held:

> The recording provision, contained in § 2518(8)(a), was enacted to serve an evidentiary function. Congress apparently realized that testimony by monitoring agents of what they heard would be open to attack on grounds of hearsay, failure of recollection and bias. Tape recordings, on the other hand, would be the best evidence and would be almost irrefutable if their authenticity and physical integrity were guaranteed. Accordingly, intercepted communications were to be recorded, if at all possible, and introduced in their recorded form. . . .
>
> There is no indication that § 2518(8)(a) was intended to or could fulfill the same function as exhaustion of investigatory procedures, judicial authorization and review, and minimization in protecting an individual's right to privacy. It follows that a failure to record, though admittedly a violation of the statute, does not lead to suppression and reversal of the convictions. This result is dictated by the decisions in *Donovan*, *Chavez* and *Giordano*.

*United States v. Clerkley*, 556 F. 2d at 718-19.   However, the exact issue before the

*Clerkley* court as to § 2518(8)(a) was "whether the communications introduced at trial,

constituting the recorded conversations at London's office, were 'unlawfully intercepted'

because of the failure to record other dialogue between the co-conspirators."  *Id.* at 718.  In

other words, the monitored conversations introduced at trial were recorded in accordance

with the mandate of Title III. Therefore, the Fourth Circuit's denial of suppression is

consistent with the United States Supreme Court's direction that "[not] every failure to

comply *fully* with any requirement provided in Title III would render the interception of wire

or oral communications 'unlawful.'" *United States v. Chavez*, 416 U.S. at 574-75 (1974)

(emphasis added). That is to be contrasted to the situation here where absolutely nothing

was recorded as required. Similarly in *Daly*, the Eighth Circuit was addressing a vary limited

violation of § 2518 (8)(a), rather than a wholesale disregard of the recording requirement:

> Daly's final attack on the wiretaps concerns the failure of the agents to record
> all communications to which they listened. He claims that this failure violates
> 18 U.S.C. s 2518(8)(a) and requires suppression of the conversations. With
> the exception of certain *de minimus* conversations monitored by Inspector
> Maki, discussed supra, the monitoring agents failed to record only when they
> made spot-checks of innocent conversations.

*U.S. v. Daly*, 535 F.2d at 442. Likewise, in *Gerena* the Connecticut District Court was not

confronted with a total failure to record as directed by Title III. Rather, there the court found:

> In light of the thousands of hours of electronic surveillance in this case in
> Puerto Rico, the misconduct of Agents Morgan and Alba constitutes no more
> than a **de minimis transgression** of the statute which does not require the
> suppression of all the electronic surveillance tapes.

*U.S. v. Gerena*, 695 F. Supp. at 1396 (emphasis added). Finally, *Paredes-Moya*, upon

which the government relies, is also distinguishable from the case at bar, although for a

different reason. The Northern District of Texas in denying a motion to suppress pager

interceptions for failure to record determined:

> Thus, electronic recording was not possible--at least with the equipment the
> government attempted to use. The defendants have not shown there was a
> device available that the government intentionally or otherwise failed to use.
> Absent such a showing the court concludes that recording was not possible.

*U.S. v. Paredes-Moya*, 722 F. Supp. at 1407. In contrast, here it is undisputed that the

technology to record was available. However, despite the applicable statute and despite

court order, the executing officers apparently opted on their own not to utilize it.

Moreover, to find as the government urges, on the facts presented here, would not only effectively undermine the authority of the district court, but might well encourage investigative abuses.  For example, let's say that, pursuant to 18 U.S.C. § 2510, et. seq., a district judge, upon proper application, signed an order authorizing the interception of telephone communications relating to specific subscriber information. That judge would necessarily have to include in his order the recording provision mandated in 18 U.S.C. § 2518 (8)(a). Let's further say that the law enforcement officers charged with executing the order chose, as was the case here, to blatantly and for no legitimate reason ignore the district judge's statutorily-required direction to record. Rather, acting on their own, they decided to merely write down their recollection of relevant conversations, and then they passed this information to other officers who relied on such conversations to establish probable cause to interview a defendant and search his residence, resulting in both incriminating statements and incriminating tangible evidence. In such a scenario, the government, recognizing the egregiousness of the monitoring agents' conduct and wishing to insulate its case from attack,  might well choose to forgo the wiretap evidence and rely solely on the incriminating  statements and incriminating tangible evidence. In such a circumstance, the district judge would be powerless to remedy the obvious wrong, and the defense would be powerless to bring the wrong to a jury's attention. To put it another way, if this Court were to accept the government's broad-sweeping rationale on this matter involving a State-issued eavesdropping warrant, sooner or later it could well find itself in the position of being hoisted on its own petard.

Additionally, as defendant Minni suggests, were the Court to accept the government's position in the circumstances of this case, it would logically lead to the

emasculation of the sealing requirement of Title III.  Clearly, there can be no dispute (the

government conceded as much at oral argument) that  violation as to sealing would

substantially impinge upon the Fourth Amendment privacy rights sought to be protected by

Congress with respect to the use electronic surveillance:

> The immediate sealing and storage of recordings of intercepted
> conversations, under the supervision of a judge, is an integral part of this
> statutory scheme. Section 2518(8)(a) was intended to "insure that accurate
> records will be kept of intercepted communications". . . . Clearly all of the
> carefully planned strictures on the conduct of electronic surveillance . . . would
> be unavailing if no reliable records existed of the conversations which were,
> in fact, overheard.

*U.S. v. Vazquez*,  605 F.2d 1269, 1274 (2d Cir. 1979).[4] However, since the sealing

requirement of § 2518 (8)(a) applies only to recordings "on tape or wire or other comparable

device," such recording is a condition precedent to sealing.[5]  Consequently, blanket

circumvention of the recording requirement would necessarily allow blanket circumvention

of the sealing requirement, a result that would obviously be at odds with the statutory

scheme. The Court believes that consistent with this conclusion, is following language from

---

[4]This language in *Vazquez* could arguably be read to suggest that both recording and
sealing, the two components  § 2518(8)(a), are integral to the statutory framework. Both are
needed to insure accurate records consistent with the "carefully planned strictures on the
conduct of electronic surveillance." The fact that one or both serves an evidentiary function is
not *per se* inconsistent with this conclusion. In fact, on this point the Ninth Circuit stated, "As we
have said, the purpose of the recordation provision, as well as the *companion sealing
requirement*, is an evidentiary one--to ensure the reliability and integrity of the contents of
intercepted communications." *United States v. Hermanek,*  289 F.3d 1076, 1088-89 (9ᵗʰ Cir.
2002) (emphasis added).

[5]It can not seriously be contended that handwritten log entries amount to some "other
comparable device" within the meaning of § 2518(8)(a). See *United States v. Hermanek*, 289 F.
3d at 1088-89 & n.5; *United States v. Suarez*, 906 F. 2d 977, 983 (4ᵗʰ Cir. 1990).

*United States v. Donovan*, 429 U.S. 413 (1977):[6]

> In addition to these provisions for mandatory and discretionary inventory notice, the Government is required to supply the issuing judge with recordings of the intercepted conversations, which are to be sealed according to his directions. 18 U.S.C. s 2518(8)(a). These notice and return provisions satisfy constitutional requirements.

*United States v.  Donovan*,  429 U.S. at 429, FN 19.

It would seem that  if the recording requirement can be totally obviated without justification at the discretion of the executing officers, and, that, as a consequence there is nothing that is required to be sealed, such situation, under *Donovan*, would indeed have a constitutional impact.

In opposing suppression, the government also refers the Court to 18 U.S.C. § 2515, 18 U.S.C § 2518(10)(a), and 18 U.S.C. § 2518(10)(c). § 2515 reads:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

§ 2518(10(a) in pertinent pat states:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that–

---

[6]The Court would point out that, as referenced on page seven of this decision, the Fourth Circuit in *Clerkley* cited to *Donovan* in reaching its conclusion that a violation of § 2518(8)(a) did not require suppression.

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

§ 2518(10)(c) indicates:

> The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

The government correctly argues that the suppression remedies of § 2515 and § 2518(10)(a) are available only with respect to oral or wire communications, and not with respect to electronic communications, the type at issue in this case, which are subject to the limitation of § 2518(10(c). *United States v. Steiger*, 1050-51 (11th Cir. 2003) ("[T]he suppression provision in the [Wiretap] Act provides no basis for moving to suppress electronic communications. By its terms, 18 U.S.C. § 2515 applies only to 'wire or oral communication[s],' and not to "electronic communications'"); *United States. v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990)  (The Electronic Privacy Communications Privacy Act, which amended Title III to include electronic communications  "does not provide an independent statutory remedy of suppression for interceptions of electronic communications. 18 U.S.C. § 2518(10)(c).").

However, here, the Court finds that suppression is, nonetheless required. Specifically, the Court concludes, for the reasons discussed above, that the total and unjustified disregard of the direction to record, as established by the facts and circumstances of this case, does amount to a violation of constitutional magnitude.

## CONCLUSION

Accordingly, the motions of the defendants, Amanuel, Minni, and De Meyer (# 20,

# 28, and # 37  respectively) to suppress evidence derived from the March 19, 2002 New

York State eavesdropping warrant are granted.

SO ORDERED.

Dated:       Rochester, New York
             November 23, 2005

                                      ENTER.


                                      /s/ Charles J. Siragusa
                                      CHARLES J. SIRAGUSA
                                      United States District Judge